Y. Supp. 728; Thompson v. Railway Co., 145 N. Y. 196, 39 N. E. 709. Had the deceased been told immediately prior to the accident that if he got upon the wall, or jumped upon it, he was in danger of falling over upon the rocks below, his knowledge of the dangers which confronted him would not have been increased. The occasion of his injury was a heedless attempt upon his part to recover the sling, and, being such, he clearly contributed to his death. This defeats a recovery.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and INGRAHAM and O'BRIEN, JJ., concur. LAUGHLIN, J., concurs on first ground.

---

(75 App. Div. 431.)

## ROBINSON v. NEW YORK & T. S. S. CO.

(Supreme Court, Appellate Division, First Department. November 7, 1902.)

1. CARRIERS—THROUGH BILLS OF LADING—PROVISIONS—CUSTOMS.

Where a through bill of lading provided that, in the event of the articles being shipped by water, they should be subject to all customary conditions, and it was claimed by defendant, a connecting water carrier, in whose possession the goods were destroyed by fire, that it was customary to stipulate for nonliability for such loss, but the proof established that a large part of defendant's business was transacted without any right to such exemptions, and that through bills of lading issued by railroads in connection with defendant were not uniform in stipulating for such exemptions, and that one of the defendant's witnesses had been engaged in an attempt to agree on a uniform bill, containing uniform exemptions, but had been unsuccessful, the custom was not proved, and defendant was liable for the loss.

Appeal from trial term, New York county.

Action by Charles L. Robinson against the New York & Texas Steamship Company. From a judgment in favor of plaintiff (74 N. Y. Supp. 384), defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Charles E. Hughes, for plaintiff.
George W. Wingate, for defendant.

PATTERSON, J. This action was brought upon the defendant's common-law liability as a common carrier for a loss sustained by the plaintiff's assignor on merchandise destroyed by fire while in the possession of the carrier. There have been two trials of the action. On the first trial, judgment was rendered in favor of the defendant, but on an appeal to this court that judgment was reversed and a new trial was ordered. Robinson v. Steamship Co., 63 App. Div. 211, 71 N. Y. Supp. 424. The second trial, which was before the court without a jury, resulted in a judgment in favor of the plaintiff, and from that judgment this appeal is taken.

It appears that the Slater Woolen Company of Massachusetts, the plaintiff's assignor, was the owner of two lots of cotton which were shipped from Texas,—one lot at San Angelo, by the Gulf, Colorado

& Santa Fé Railway Company, and the other lot at Walnut Springs, by the Texas Central Railroad Company The Texas Central Railroad carried the lot shipped by it as far as Morgan, Tex., when it delivered it to the Gulf, Colorado & Santa Fé Railway Company, and both lots were delivered by the last-named company to the defendant at its wharf in the city of Galveston. When each lot of goods was delivered to the initial carrier, a bill of lading was issued by that carrier; but, when the Walnut Springs shipment was turned over to the Gulf, Colorado & Santa Fé Railway Company at Morgan, no new bill of lading was issued, nor was any bill of lading issued when both shipments were transferred to the possession of the defendant. The defendant claimed that it was exempt from liability by the provisions of the two bills of lading issued by the railroad companies; that each of those bills was a through bill covering the merchandise at the time of its destruction by fire. When the case was before us on the former appeal, it was held that the bill of lading issued by the Gulf, Colorado & Santa Fé Railway Company was not to be construed as a through bill of lading; that, within the terms of that bill, the contract of carriage made by the railroad company ended with the delivery of the goods at Galveston; that the defendant, as a connecting carrier, was not entitled to any exemptions contained in that bill of lading, and, when the defendant received the goods and receipted for them, it did so as a common carrier; that its liability as such immediately attached; and that for the loss of the goods thus received the defendant was clearly liable. Nothing was shown on the trial now under review which changes the relations of the parties in any way, so far as this bill of lading is concerned; and, indeed, it is admitted by the defendant (appellant) that our former decision is conclusive upon that branch of the case.

But with respect to the Walnut Springs bill of lading we held on the former appeal that it was a through bill, and that the defendant would be entitled to the protection of any exemption of liability within its provisions. In construing that bill, we proceeded to say that there was contained in it no express exemption, in terms, from loss sustained by fire; that the defendant claimed exemption, however, by virtue of the following clause in the bill:

"It is further stipulated that, in the event of the articles herein named being conveyed by water transportation en route to destination, they shall be subject to all customary conditions of same."

We assumed on the former appeal that effect might be given to the clause quoted, although its language was quite general in character, and extremely uncertain in meaning. It is now seriously argued by the respondent, as it was before, that the whole clause should be rejected because of its uncertainty, but we do not consider it necessary to decide that point. It is sufficient to consider what the appellant's contention is respecting that clause, and whether that contention is supported by the proof which was adduced at the second trial. The claim, substantially, is that there was a well-established usage and custom, generally known, that, in contracts for the transportation of goods by water, exemptions are always inserted covering losses sustained by fire, and that as a consequence this Walnut Springs bill of lading is to be construed as though it contained in terms such an ex-

emption.   That is the same construction we were asked to give to this bill of lading on the former appeal, and it was then claimed that there was proof to show a general usage and custom exempting water carriers from the common-law liability, and that it was of such a character that it had acquired the force of law, or required that the contract of the parties should be considered as if it expressly provided for such exemption.   We held upon the record as it then appeared that there was no such proof, and we are obliged to hold the same with reference to the evidence as it appears in the record now before us.   Unless the exemption arises under the terms of the bill of lading, or a reasonable, uniform, well-established usage ingrafted upon it, we do not doubt that the defendant's common-law liability attached to the goods received by it under the Walnut Springs bill of lading; and, as we observed on the former appeal, the proof establishing usage and custom to incorporate an exemption from liability for fire upon the part of the carrier must be clear, cogent, and convincing.   Looking at the terms of the Walnut Springs bill of lading, we find that the phrase used is that, if the articles are conveyed by water transportation, they shall be subject to all customary conditions of water transportation.   If a usage were to be proven that were to control in this case, the defendant would be required to show that, as a rule, goods carried by water transportation were subject to conditions.   But it distinctly appears in evidence in this case that goods which the defendant received from railroads were carried without the issuance of any marine bill of lading, and, as the respondent's counsel well puts it, a large part, if not the greater part, of the defendant's business was transacted without any right to an exemption from its common-law liability as a carrier, except as might be found in the various railroad bills, and not to those unless the railroad bills were through bills.   The through bills issued by the different railroads delivering goods to the defendant were not uniform in stipulating for exemptions from liability, nor was there shown to be uniformity of stipulation, exempting from loss by fire contained in such bills.   The Walnut Springs bill contained no such exemption, and it does not appear, nor is it claimed by the defendant, that such exemption was contained in the bills issued by other roads.   On the contrary, it is shown that one of the defendants' witnesses (Mr. Guillaudeu, of the Old Dominion Line) was engaged in an attempt to agree upon a bill of lading containing uniform exemptions from liability, but up to this time no agreement has been reached. As the defendant took goods from all connecting railroads, and issued no bills of lading therefor, it is manifest that there could be no customary usage which exempted from loss by fire in all cases of carriage, as some of the bills contained no such exemption, and as to these there was no variation of the common-law liability of the carrier.   The defendant received and carried such goods without regard to exemption from fire, and has received and continues to receive goods from all railroads indifferently, whether the bills contain such exemptions or not.   It is evident, therefore, that the words "customary conditions," contained in this bill, cannot be said to stipulate for exemption in case of loss by fire.

The judgment appealed from should be affirmed, with costs.   All concur.